

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

CITADEL CONSTRUCTION CORP.,                          Case No.

              Plaintiff,                   :

        -against-                        :        **COMPLAINT**

CLASSIC DESIGN & FABRICATION, INC. and               :
MICHAEL KRASUN,

           Defendants.                      :

------------------------------------------------------x

Plaintiff, by its attorneys, Meier Franzino & Scher, LLP, complaining of the defendants, alleges as follows:

## JURISDICTION AND VENUE

1)      This is an action under 28 USC 1332. Plaintiff is a corporation duly incorporated pursuant to the laws of the State of Delaware having its principal place of business in the State New York. Defendant Classic Design & Fabrication, Inc. ("Classic") is a Florida corporation with its principal place of business in the State of Connecticut. Defendant Michael Krasun ("Krasun") is a resident of the State of Connecticut. Plaintiff and defendants are not citizens of the same state. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. Venue is proper since plaintiff resides in this district and the contracts herein provides for jurisdiction in this district.

## THE PARTIES

2)      Plaintiff is a corporation duly organized and existing pursuant to the laws of the State of Delaware and maintains its principal place of business at 220 Fifth Avenue in the City, County and State of New York. Plaintiff is in the business of a construction company.

3.     Defendant Classic is a corporation organized and existing pursuant to the laws of the State of Florida and maintains its principal place of business in the State of Connecticut.   Classic is in the business of a construction subcontractor.

4.     Defendant Krasun is a resident of the State of Connecticut and is the principal of and an officer of defendant Classic.

## THE FACTS

5.     Plaintiff entered into certain contracts to perform contracting services with respect to a project known as "Bobby Vans" to be performed at the American Airlines Terminal Number 8 in Jamaica, New York and a further project known as "WURK" at 1515 Broadway, New York.

6.     On or about July 22, 2008, plaintiff entered into a contract in writing in the form of a purchase order with Classic requiring Classic, *inter alia*, to provide materials and services with respect to the project aforesaid known as "Bobby Vans".  A copy of said agreement (the "Bobby Vans Contract") is annexed hereto as Exhibit A and made apart hereof.

7.     Pursuant to the terms of the Bobby Vans Contract, plaintiff on or about November 6, 2008 provided Classic with a deposit check in the sum of One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00).  This check (the "Deposit") was accepted and deposited by Classic.

8.     On or about November 4, 2008, plaintiff entered into a further contract in writing in the form of a purchase order with Classic, requiring Classic, *inter alia*, to provide materials and services with respect to the project aforesaid known as "WURK".  A copy of said agreement (the "WURK Contract") is annexed hereto as Exhibit B and made apart hereof.

9.     That in spite of demands, defendant Classic failed and refused to comply with the requirements of said contracts and failed and refused to perform the work and provide

the materials required of it by the aforesaid contracts.

10.     On December 22, 2008, plaintiff, in writing, terminated the said contracts with Classic for cause.  Said writing, among other things, further advised Classic that it would be held liable for all damages suffered by plaintiff, including, with limitation, damages suffered by plaintiff in having Classic's obligations performed, the cost of which was in excess of the contract sum agreed to by Classic.

11.     On December 22, 2008, plaintiff, in writing, further demanded that defendants return of the Deposit.  Plaintiff had learned that said monies had not been used for the purpose intended and had in fact been diverted and converted.  Plaintiff further learned that documents provided by defendants to demonstrate the use of the Deposit had been falsified.

12.     That by reason of the premises, plaintiff has suffered damages, including, without limitation, the loss of the Bobby Vans Deposit of One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00), the cost of completion of defendant Classic's obligations, as set forth above, which sum, although not fully liquidated is in excess of the sum of Seven Hundred Thousand Dollars ($700,000) and plaintiff's attorneys fees, costs and disbursements herein, which are part of plaintiff's damages as defined by the Bobby Vans Contract and the WURKS Contract.

### COUNT I.

### (Breach of Contract against Defendant Classic)

13.     Plaintiff repeats and realleges all of the allegations contained in paragraphs "1" through "12" hereof as though fully set forth herein.

14.     Plaintiff entered into the Bobby Vans Contract and the WURK Contract with defendant Classic.

15.     Plaintiff has duly performed all conditions on its part pursuant to the

said contracts.

16.     Defendant Classic breached the said contracts in that Classic failed and refused to comply with the requirements of the said contracts and failed and refused to perform the work and provide the materials required of it by the aforesaid contracts.

17.     That by reason of the premises, plaintiff has suffered damages, including, without limitation, the loss of the Bobby Vans Deposit of One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00), the cost of completion of defendant Classic's obligations, as set forth above, which sum, although not fully liquidated, is in excess of the sum of Seven Hundred Thousand Dollars ($700,000) and plaintiff's attorneys fees , costs and disbursements herein, which are part of plaintiff's damages as defined by the Bobby Vans Contract and the WURKS Contract.

## COUNT II.

## (VIOLATION OF ARTICLE 3-A OF THE LIEN LAW OF THE STATE OF NEW YORK)

18.     Plaintiff repeats and realleges all of the allegations contained in paragraphs "1" through "12" hereof as though fully set forth herein.

19.     That the Bobby Vans Deposit of One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00) given by plaintiff to Classic constituted a trust fund as said term is defined and contemplated by Article 3-A of the Lien Law of the State of New York.

20.     That in violation of Article 3-A of the Lien Law of the State of New York defendants failed to maintain records of the trust as required by Lien Law Section 75.

21.     That in violation of Sections 71 and 79-a of the Lien Law, defendants failed to use the Bobby Vans Deposit as required by law, failed to return said fund to plaintiff and diverted and converted said monies in violation of law.

22.     It is required that defendants account to plaintiff for the Bobby Vans Deposit and that plaintiff be granted a judgment against defendants for the sum of One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00) One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00).

WHEREFORE, as a result of defendants' defaults and actions, plaintiff has been damaged and demands a judgment as follows:

A.     On Count I, against Classic in the sum of One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00) arising from the loss of the Bobby Vans Deposit, in a sum to be liquidated which is in excess of Seven Hundred Thousand Dollars ($700,000) arising from the cost of completion of defendant Classic's obligations, and a further sum for plaintiff's attorneys fees, costs and disbursements herein, which are part of plaintiff's damages as defined by the Bobby Vans Contract and the WURKS Contract.

B.     On Count II, against defendants in the sum One Hundred and Five Thousand Seven Hundred Fifty Dollars ($105,750.00).

C.     Interest and costs as determined proper by the Court.

D.     Such other and further relief as the Court may deem just in the premises.

Dated: New York, New York
        January 15, 2009

                            MEIER FRANZINO & SCHER, LLP.

                            By:_____
                            Steven K. Meier (SKM - 1609)
                            570 Lexington Avenue 26th floor
                            New York, New York 10022
                            (212) 759-9770

# EXHIBIT A



## CONSTRUCTION CORP

?20 Fifth Ave
Floor
, York, NY  10001
Phone: 212-710-8600
Fax:212-710-8501

## PURCHASE ORDER

TO:   Classic Design & Fabrication
      1207 Wood CT
      Plant City, FL  335635

| | |
|---|---|
| Subcontract #: | PNY08125-001 |
| Date: | 7/22/2008 |
| Job: | Bobby Vans |
| Job #: | 10-08-125 |
| Job Address: | American Airline Terminal # 8 |
| | Retail Unit M-16 |
| | Jamaica, NY  11430 |

Scope of Work:

Provide labor and materials to furnish all work as per attached Drawing Manifest.  And comply with all building rules and regulations. Subcontractor will conform to the schedule required to achieve desired completion date.

THE SUBCONTRACTOR/VENDOR MUST SIGN THIS COVER SHEET AND INITIAL ALL SHEETS ATTACHED HERETO WHERE REQUESTED.

Total Subcontract Amount:    470,000.00

Inclusions:

Furnish and install all Millwork as per plans and specs
Drawing Manifest
Attached Leveling Sheet

Exclusions:

None



### Governing Terms & Conditions

This Agreement (the "Agreement") is entered into effective as of July 22, 2008, by and between Citadel Construction Corp., a Delaware corporation ("Citadel") and Classic Design & Fabrication, ("Subcontractor").

I.      Citadel wishes to retain Subcontractor, and Subcontractor agrees to be retained, to perform certain work, as set forth in the Contract Documents and as supplemented from time to time, for the fixed Contract Price set forth above herein. Each party intends for this Agreement to be legal, binding and enforceable and agrees not to challenge the enforceability or validity of this Agreement based on any lack of authority of any employee to execute this Agreement or any law requiring agreements to be in writing or to be signed by the parties. Unless otherwise specified herein, this Agreement (including all exhibits, schedules and written supplements) shall be the sole agreement between the parties as to the Work that Subcontractor is to perform and shall only be amended by a written instrument executed by both Citadel and Subcontractor. Conflicts in the Contract Documents brought to the attention of Citadel after the execution of this Agreement shall not be considered as a basis for adjustment in the Contract Price.

II.      **Time is of the essence with respect to the Work that Subcontractor is to perform pursuant to this Agreement.** Subcontractor agrees to commence and prosecute the Work when directed by Citadel in accordance with the Project Schedule set forth in the Contract Documents. Citadel shall have the right to decide the order, time and priority in which various elements of the Work are to be performed by Subcontractor. Citadel shall have the right to seek damages and withhold payment for costs incurred by Citadel in the event that Subcontractor (i) exceeds the allotted timeframe set forth in the Project Schedule or (ii) fails to comply with the individual segments of time for specific scopes of the Work as set forth in the Project Schedule. In the event that Subcontractor fails to complete the Work within the timeframe set forth in the Project Schedule, Subcontractor acknowledges and agrees that Citadel may set-off against any payment due to Subcontractor, on this or any other project, to compensate Citadel for damages resulting from Subcontractor's failure to comply with the Project Schedule.

III.      Subcontractor agrees to perform the Work in a prompt, continuous and diligent manner and will complete all Work in ordance with the Contract Documents. Subcontractor shall, as part of its performance of the Work, provide all materials, supplies, tools, equipment, supervision, labor, utilities, testing, certifications, shop drawings and other items necessary to fully perform all of the Work and to complete said Work in accordance with the Contract Documents. The Contract Price paid by Citadel to Subcontractor shall include the cost for any and all taxes, licenses, bond premiums, insurance premiums, guaranties and warranties. A labor dispute shall not provide an excuse for the failure to adhere to and satisfy the Project Schedule.

IV.      Subcontractor represents and warranties to Citadel that: (a) Subcontractor is duly qualified, registered, organized and licensed to do business in the State where the Work is to be performed; (b) Subcontractor is aware of and accepts all of its obligations under local, state and national laws, rules and regulations; (c) the execution of this Agreement has been duly authorized by all necessary action on the part of Subcontractor and does not violate any of the terms and conditions set forth in Subcontractor's governing documents, any contracts to which it is a party, or any law, rule, regulation, or order applicable to it; (d) Subcontractor is not insolvent, nor is it subject to any proceedings - pending, threatened, or contemplated - against it would result in Subcontractor becoming insolvent or bankrupt; (e) this Agreement constitutes a legally valid and binding obligation enforceable against Subcontractor in accordance with its terms.

V.      Subcontractor shall take necessary precautions to protect the Work and the work of others from damage caused by Subcontractor's operations. Should Subcontractor damage the Work, the Project Site or the property of Citadel or others, Subcontractor shall promptly remedy such damage to the satisfaction of Citadel.

VI.      Subcontractor shall, with respect to the Work, give any required notices or filings to authorities and secure and pay for all permits, fees, licenses, assessments and taxes (including local and state sales and use taxes) necessary to complete the Work in accordance with the Contract Documents. The Subcontractor shall comply with all federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts with respect to its performance of the Work. All such costs of compliance, permits, licenses, taxes and insurance shall be deemed to be included in the Contract Price.

VII.      Subcontractor acknowledges that it has reviewed, and is familiar with Citadel's Safety and Health Program (the "Safety Program") which is incorporated herein by reference and that Subcontractor shall abide by the terms of the Safety Program at all times



performance of the Work - in addition to its compliance with the Safety Program - and shall abide by all applicable laws, ordinances, s, regulations and orders of public authorities for the safety of persons and property. Failure to comply with the Safety Program, as well as any other applicable laws or regulations, may result in withholding of payment by Citadel until such time as Subcontractor remedies any safety violations or inadequacies. Subcontractor shall defend, indemnify, and hold harmless Citadel, its officers, directors, advisors, employees, agents, shareholders, the owner of the Project and the owner of the Project Site, (collectively, the "Citadel Indemnities") from any and all claims, damages, fines or other costs levied as a result of Subcontractor's failure to abide by any safety, health, fire or environmental rules, laws, regulations or ordinances in the planning and/or execution of the Work. Citadel shall have the authority to stop any work in progress to enforce safety requirements on the Project Site. Citadel shall not be responsible for any damages due to a work stoppage initiated by Citadel for safety related reasons. In the event that the Work or the Project Site is stopped or shut down by Citadel, or any outside agency or authority, caused in whole or in part due to any act, error or omission of Subcontractor, including but not limited to those related to safety and health, Subcontractor shall be responsible for all costs and damages suffered by Citadel due to such delays or disruptions, in addition to any liquidated damages suffered by Citadel as a result of same.

VIII.    Subcontractor may employ subcontractors of its own as part of the performance of the Work only upon prior written approval by Citadel - said approval may be withheld by Citadel in its sole and absolute discretion. Citadel's refusal to approve a lower-tier subcontractor shall not be considered a justifiable reason for affecting either the Project Schedule or Contract Price. Subcontractor shall be liable to Citadel for any acts or omissions of lower-tier subcontractors employed by Subcontractor and their agents and employees. Subcontractor shall require each lower-tier subcontractor to abide by the terms and conditions of this Agreement and shall promptly notify Citadel of any lower-tier subcontractor who is in default under the terms of this Agreement or any other agreement to which it is a party no later than three (3) business days after the occurrence of the default. Nothing contained in this Agreement shall create a contractual relationship between Citadel and Subcontractor's subcontractors or suppliers. Subcontractor shall protect, indemnify and hold harmless the Citadel Indemnities, from any damages, lawsuits, expenses, demands, claims, liens (including mechanics lien) and any cause of action arising from any of Subcontractor's subcontractors, employees or suppliers.

IX.    Subcontractor warrants to Citadel that materials and equipments furnished as part of the Work will be of good quality and shall be new unless otherwise provided in the Contract Documents. Work not conforming to the standards set forth in the Contract Documents, including substitutions not properly approved or authorized, shall be deemed defective and not accepted by Citadel. This warranty shall in addition to, and not in limitation or in lieu of, any warrants or remedy required by law or by the Contract Documents. Subcontractor agrees to satisfy such warranty obligations, which appear within the guaranty or warranty period established in the Contract Documents without cost or expense to Citadel. Unless otherwise provided in the Contract Documents, Subcontractor shall provide a warranty for the Work for a period of one (1) year from the date of final completion of the Project.

X.    If a mechanic's lien or bond claim is filed against Citadel, its surety, the Project or the Project Site, which in any way relates to this Agreement, Subcontractor shall defend against any such claim, lien or proceedings at its sole cost and expense and shall indemnify the Citadel Indemnities against any losses, damages, and expenses - including reasonable attorneys fees - which may be incurred as a result of said mechanic's lien. If the mechanic's lien is not bonded or satisfied by Subcontractor within seventy two (72) hours of receipt of written notice to do so from Citadel, Citadel shall then have the right without further notice to Subcontractor to bond the lien and withhold all costs associated with bonding the lien (including attorneys fees) from any future payments due to Subcontractor.

XI.    Without invalidating this Agreement, Citadel may, by issuance of a written order (a "Change Order") instruct Subcontractor to make certain changes to the Work, including any addition to, deletion from, or modification to the quality, function or intent of the Work and to adjust the Project Schedule and Contract Price accordingly (all of the foregoing, "Changes"). Changes may only be authorized by Change Orders, issued in writing to Subcontractor. Change Orders will constitute the sole and exclusive remedy to Subcontractor for any Changes. For any Change initiated by Citadel, Citadel shall submit to Subcontractor a Change Order Notice. Subcontractor will promptly review the Change Order Notice and, within three (3) business days, notify Citadel of any impact that the proposed Change(s) would have on the Contract Price or Project Schedule. Based upon such information, Citadel may, but shall not be obligated to, issue a Change Order to Subcontractor to effect the Change. Subcontractor shall not perform any Changes to the Work without an executed Change Order issued by Citadel. Subcontractor shall not be entitled to compensation for any additional work it performs that is not covered by an executed Change Order. All Change Orders issued pursuant to this Agreement shall form a part of this Agreement and shall be governed by the terms of this Agreement.



Initials

In the event that Subcontractor becomes aware of any circumstances that Subcontractor has reason to believe may necessitate a Change, contractor will notify Citadel in writing of the potential Change and shall include all necessary documentation sufficient to enable Citadel to determine (a) the factors necessitating the possibility of a Change, (b) the impact which the Change is likely to have on Contract Price and Project Schedule and (c) any other information which Citadel may request in connection with such Change.  If Subcontractor fails to notify Citadel of a circumstance necessitating a Change within three (3) business days after Subcontractor becomes aware of such circumstances, Citadel shall not be obligated to issue a Change Order to Subcontractor for the Change.

XII.   EXCEPTING ONLY THE RESPONSIBILITY OF CITADEL FOR ITS OWN ACTS OF GROSS NEGLIGENCE, TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR SHALL INDEMNIFY AND HOLD HARMLESS THE CITADEL INDEMNITIES FROM AND AGAINST ANY CLAIMS, DAMAGES, LOSSES, FINES, LIABILTIES, PAYMENTS AND EXPENSES (INCLUDING BUT NOT LIMITED TO ATTORNEYS FEES) ARISING OUT OF AND IN CONNECTION WITH INJURIES (INCLUDING DEATH) OR DAMAGE TO PROPERTY (INCLUDING MATERIALS, MACHINERY, TOOLS AND EQUIPMENT OR OTHER WORK PERFORMED BY OTHER SUBCONTRACTORS ON THE PROJECT) RESULTING FROM OR CONNECTED TO SUBCONTRACTOR'S PERFORMANCE OF THE WORK, ARISING OUT OF THE WORK BY SUBCONTRACTOR OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY SUBCONTRACTOR (INCLUDING SUPPLIERS AND SUBCONTRACTORS OF THE SUBCONTRACTOR) OR ANYONE ELSE FOR WHOSE ACTS SUBCONTRACTOR MAY BE LIABLE.  THE PROVISIONS SET FORTH HEREIN SHALL NOT BE CONSTRUED TO NEGATE, OR ABRIDGE, OR OTHERWISE REDUCE ANY OTHER RIGHT OR OBLIGATION OF INDEMNITY, WHICH WOULD OTHERWISE EXIST AS TO ANY PARTY OR PERSON SET FORTH HEREIN.  SUBCONTRACTOR'S INDEMNIFICATION OBLIGATION AS SET FORTH HEREIN SHALL NOT BE LIMITED IN ANY WAY BY ANY LIMITATION ON AMOUNT OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR SUBCONTRACTOR UNDER WORKER'S OR WORKMEN'S COMPENSATION ACTS, DISABILITY ACTS OR OTHER EMPLOYEE BENEFIT ACTS.

XIII.   Together with the signed copy of this Agreement, Subcontractor shall provide to Citadel (a) the schedule of values for the Work; (b) a complete list of all proposed subcontractors to be used by Subcontractor on the Project; (c) insurance certificates in compliance with the insurance requirements set forth in this Agreement and (d) a 24 hour/7 day/week contract list showing names, home and cellular phone numbers and email addresses for Subcontractor's Project Manager, Field Superintendent and Owners.  Payment to Subcontractor for the Work shall not constitute or imply acceptance by Citadel of any portion of the Work and shall not constitute a waiver of any claims against Subcontractor.  No payment shall be due, nor made, to Subcontractor unless Subcontractor has complied with all obligations set forth in this Agreement and has provided lien waivers in a form and substance as required by Citadel.  Based upon applications for payment submitted by Subcontractor to Citadel, Citadel shall make progress payments on account of the Contract Price to Subcontractor.  Applications for monthly progress payments shall be submitted by Subcontractor to Citadel using forms and methods required by Citadel.  Citadel shall pay ninety (90%) percent of the amount of the approved application for payment and shall withhold ten (10%) percent of the approved payment for retainage.  If Citadel has reason to believe that Subcontractor is not satisfying obligations incurred by it in accordance with the performance of its Work, Citadel shall give written notice to Subcontractor and may take any necessary actions to see that progress payments made on account of the Contract Price are being used to satisfy said obligations.  If within five (5) business days after delivering notice to Subcontractor, Subcontractor fails to (a) supply evidence to the satisfaction of Citadel that the obligations have been satisfied or (b) posts a bond indemnifying Citadel, the Project and the Project Site from such obligations, then Citadel shall have the right to withhold funds from future progress payments to Subcontractor to satisfy such obligations in question, together with all costs and expenses incurred by Citadel in connection with same (including attorneys fees).  Citadel shall have the right, at any time during the Project, to issue joint checks to Subcontractor and its suppliers or subcontractors or to pay such suppliers or subcontractors directly.

Prior to the release of any retainage held and the final payment on the Project, Subcontractor shall submit and/or certify to Citadel (u) an affidavit that all payrolls, materials, equipments and other indebtedness related to the Work have been paid or otherwise satisfied; (v) all disputes, liens, claims and causes of action relating to the Work or to this Agreement shall have been resolved; (w) all warranties, operations manuals, record drawings, maintenance bonds or other documents required by the Contract Documents shall have been provided; (x) final lien waivers for the Project and (y) any other data or documents required by Citadel.  Final payment and the release of retainage shall constitute a waiver and release of all claims by Subcontractor with respect to the Work but shall not relieve Subcontractor of any liability for the obligations assumed hereunder or for faulty or defective work appearing after final payment or for any warranty obligations.



XIV.     Citadel shall have the right to terminate this Agreement at any time for any reason whatsoever upon written notice (the rmination Notice") to Subcontractor specifying the extent to which this Agreement is terminated and the date upon which such termination shall be effective.  Immediately upon receipt of the Termination Notice, Subcontractor agrees to (a) stop work on the date and to the extent specified; (b) place no further orders or subcontracts for materials, services or equivalent except as may be necessary for the completion of that portion of the Work that is not affected, (c) transfer title and deliver to Citadel all materials, work in progress, completed work and supplies for which Subcontractor has been paid and (d) complete performance of any part of the Work that is not terminated pursuant to the Termination Notice.  Citadel's liability to Subcontractor for said termination shall be limited to the value of the Work performed prior to the termination date together with ten (10%) percent of the total amount paid to Subcontractor prior to the termination date for reasonable overhead and profit.  In no event shall Citadel be liable for the loss of anticipated profits or any special or consequential damages arising from said termination.

XV.     If Subcontractor refuses or fails to supply enough properly skilled workers, proper materials or equipment or fails to maintain the Project Schedule - including completion of open and incomplete items delivered to Subcontractor upon substantial completion of the Project (the "Punch List") - , or if Subcontractor disregards laws, ordinances, rules or regulations governing the Work or the Project Site or if Subcontractor is in breach of any of the terms and conditions of this Agreement and fails within three (3) business days after receipt of written notice from Citadel (the "First Notice") to commence and continue satisfactory correction of such default with diligence and promptness, then Citadel shall, without prejudice to any rights or remedies, have the right to (a) retain one or more additional subcontractors, or use Citadel's own personnel, to perform such part of the Work that Subcontractor has failed to perform and charge the cost thereof to Subcontractor, (b) supply additional workers, equipment and materials as Citadel deems necessary for completion of the Work which Subcontractor has failed to complete or perform and charge the cost thereof to Subcontractor; and (c) withhold further progress payments due Subcontractor pending corrective action to the extent required by and to the satisfaction of Citadel.  In the event of any emergency affecting the safety of persons and/or property, Citadel may proceed as above without written notice.

Notwithstanding the foregoing, if Subcontractor fails to commence and satisfactorily continue correction of a default hereunder within three (3) business days of its receipt of the First Notice then Citadel may - in addition to or in lieu of any other remedies provided hereunder - issue a second written notice (the "Final Notice") by certified or overnight mail to Subcontractor.  If Subcontractor fails to commence and continue correction of a default within three (3) business days after its receipt of the Final Notice, Citadel may terminate .Agreement "for cause" and without further notice.  Upon such a termination "for cause", Citadel shall have the right to (w) use any materials, implements, equipment, tools or appliances furnished or belonging to Subcontractor to complete the Work; (t)  to assume any agreements and orders in effect between Subcontractor and any of its subcontractors or suppliers and Subcontractor hereby consents to same; (y) employ replacement subcontractors to complete Subcontractor's Work and cure any defaults hereunder.  In the event that Citadel must take such actions as described above, the cost for same, together with reasonable overhead, profit and attorneys fees, shall be deducted from any monies due or payable to Subcontractor.  Subcontractor shall be liable to Citadel for the payment of any amount by which the costs may exceed the unpaid balance of the Contract Price.  Notwithstanding anything in this Agreement to the contrary, Citadel may at any time terminate this Agreement "for cause" if Subcontractor is deemed to be insolvent or becomes subject to a proceeding in federal bankruptcy court.

XVI.     Prior to the start of the Work, Subcontractor shall procure and maintain in full force and effect, at Subcontractor's sole expense, at least until final payment and at all times thereafter when Subcontractor may be correcting, removing or replacing defective work, insurance in the amounts and subject to the limits and requirements as set forth in Exhibit I hereof.  Subcontractor shall provide as evidence of its insurance coverage a original certificate of insurance in a form acceptable to Citadel prior to the commencement of Work.  All insurance policies shall contain provisions that (a) coverage shall not be cancelled or not renewed until at least thirty (30) days prior notice has been given to Citadel, (b) the insurance companies have consented to a waiver of subrogation in favor of Citadel and (c) Citadel, the Citadel Indemnities and any other designees have been named as "additional insureds".

XVII.   THIS AGREEMENT AND THE RIGHTS AND THE DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE WORK IS BEING PERFORMED, WITHOUT REGARDS TO PRINCIPLES OF CONFLICTS OF LAW.  EACH PARTY HERETO WAIVES ITS RESPECTIVE RIGHT TO A JURY TRIAL WITH RESPECT TO ANY LITIGATION THAT MAY ARISE UNDER OR IN CONNECTION WITH THIS AGREEMENT.   CITADEL AND SUBCONTRACTOR EACH HEREBY SUBMIT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING N THE STATE IN WHICH THE WORK IS BEING PEFORMED OVER ANY


nitials

ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT. THE PARTIES HERETO 'REE THAT A FINAL JUDGMENT IN ANY ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ᴇNFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. THE PARTIES FURTHER AGREE THAT THE "LOSING" PARTY SHALL REIMBURSE THE OTHER PARTY FOR ALL REASONABLE COSTS, INCLUDING ATTORNEYS FEES, INCURRED AS PART OF THE LITIGATION. SUBCONTRACTOR AGREES THAT THE REMEDIES SET FORTH HEREIN SHALL BE THE SOLE REMEDIES FOR RESOLUTIONS OF DISPUTES UNDER THIS AGREEMENT. SUBCONTRACTOR SHALL CARRY ON THE PERFORMANCE OF THE WORK AND MAINTAIN THE PROJECT SCHEDULE, PENDING LITIGATION, AND IF SO, CITADEL SHALL CONTINUE TO MAKE PAYMENTS FOR THE WORK, EXCEPT FOR THE DISPUTED AMOUNT, WHICH MAY BE WITHHELD. UPON WRITTEN REQUEST, SUBCONTRACTOR SHALL COOPERATE WITH CITADEL IN ANY LITIGATION, ARBITRATION OR OTHER DISPUTE RESOLUTION BETWEEN CITADEL AND A THIRD PARTY.

XVII.    Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Subcontractor to so notify Citadel in writing immediately upon its discovery thereof. Citadel shall instruct Subcontractor as to the measure to be taken and Subcontractor shall comply with Citadel's instruction. When a discrepancy exists within the Contract Documents, the Subcontractor is deemed liable to provide the most costly specification as part of this Agreement.

XIX.    Miscellaneous.

(i)      The partial or complete invalidity of any provision of this Agreement shall not affect the validity or continuing force and effect of any other provision.

(ii)  The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right with regards to further performance.

(iii) Subcontractor specifically agrees that it is an independent contractor and that Subcontractor's relationship to Citadel shall be that of an independent contractor.

In absence of a written execution by Subcontractor of this Agreement, Subcontractor's performance of Work or providing of materials after receipt of this Agreement shall be deemed conclusive acceptance of its terms and conditions.

(v)  Any notice required or permitted to be given pursuant to this Agreement shall be deemed to have been duly given when delivered by hand, telecopy or mailed by recognized overnight delivery service to either party at the addresses set forth in this agreement.

(vi)    Subcontractor shall not assign this Agreement without the prior written consent of Citadel - which consent may be withheld in Citadel's sole and absolute discretion. Citadel shall have the right to assign this Agreement to (a) any affiliate of Citadel or (b) to any third party of similar or greater financial strength than Citadel as of the date of assignment.

In witness whereof, Citadel and Subcontractor , have entered into this Agreement as of the date first written above.

Classic Design & Fabrication

Date:  7/25/08

CITADEL CONSTRUCTION CORP.

Date:  8/7/08

EXHIBIT I

INSURANCE REQUIREMENTS

FOR ANY WORK PERFORMED UNDER THIS AGREEMENT, AND UNTIL COMPLETION AND FINAL ACCEPTANCE OF THE WORK, SUBCONTRACTOR, AT ITS OWN EXPENSE, MUST PROMPTLY FURNISH TO CITADEL CONSTRUCTION CORP. ("CITADEL") A CERTIFICATE OF INSURANCE GIVING EVIDENCE THAT THE FOLLOWING COVERAGES ARE IN FORCE.  THE PROJECT SHALL BE IDENTIFIED ON THE CERTIFICATE AND CITADEL CONSTRUCTION CORP., ITS SUBSIDIARIES AND THEIR RESPECTIVE OFFICERS, EMPLOYEES AND AGENTS, THE PROJECT OWNER AND ANY OTHER PARTIES DESIGNATED BY CITADEL SHALL BE COVERED AS ADDITIONAL INSUREDS ON ALL APPROPRIATE POLICIES.   THE CERTIFICATE SHALL ALSO SHOW A WAIVER OF SUBROGATION IN FAVOR OF THOSE ENTITIES FOR ALL LINES OF COVERAGE.

| TYPE OF COVERAGE | MINIMUM LIMITS OF LIABILITY |
|---|---|
| Worker's Compensation & Disability | Statutory |

Employer's Liability

| | |
|---|---|
| Bodily Injury by Accident (per Accident) | $1,000,000 |
| Bodily Injury by Disease (per Employee) | $1,000,000 |
| Bodily Injury by Disease (Policy Limit) | $1,000,000 |

Where applicable, the Worker's Compensation insurance shall have a U.S. Longshoreman's and Harbor Work's Act Endorsement.

Commercial General Liability

Subcontractor shall purchase and maintain Commercial General Liability Insurance, which shall include a blanket contractual liability insuring the indemnification obligations of the Agreement, broad form property damage liability, and personal injury liability coverage extensions.  The policy shall provide for a General Aggregate which reinstates annually on a per project basis.  The Commercial General Liability policy must be issued on an "occurrence" basis, as distinguished from a "claims made" basis.  Such policy shall not exclude X, C, U exposures. The Commercial General Liability policy shall include products and completed operations liability shall be maintained in full force and effect for a period of three (3) years following final completion of the Work.  Additional Insured status must run to the benefit of Citadel and the Project Owner entities as identified elsewhere, on a primary and non-contributory basis, pursuant to forms CG 2033 & CG 2037 (2001 Edition) or broader.  All coverage required under commercial general liability shall be provided on an occurrence form with the following minimum limits (per Project Aggregate):

| | |
|---|---|
| Each Occurrence | $1,000,000 |
| Personal & Adv. Injury | $1,000,000 |
| Products/Completed Operations Aggregate | $1,000,000 |
| General Aggregate | $2,000,000 |

Commercial Automobile Liability

Subcontractor shall purchase and maintain Commercial Automobile Insurance to cover all vehicles owned, non-owned, hired by or used on behalf of Subcontractor.

| | |
|---|---|
| Bodily Injury & Property Damage | $1,000,000 Per Occurrence |
| Excess Liability | $5,000,000 Per Occurrence |

Initials 

b #: 10-08-125 - Subcontract # PNY08125-001

## PROPERTY INSURANCE

Subcontractor shall purchase and maintain Property Insurance covering construction machinery, equipment and tools use by the Subcontractor in its performance of the Work. Such coverage shall be written as a policy form at least equivalent to that provided by a "Contractor's Equipment Floater" as customererly defined within the insurance industry. Subcontractor agrees to notify all tiers of ontractors of their obligation to involve any any machinery, equipment and tools used by them in their performance of the work.

## INDEPENDENT OBLIGATIONS

Subcontractor's insurance obligations contained in this Exhibit I are separate from and in addition to Subcontractor's indeminification obligations as set forth in this agreement.

All insurance policies shall be provided by an insurance company or companies with a rating of not less than "A-" and "Class VII" in the last available AIA Best's Rating Guide. The limits of liability shown for each typ of insurance coverage to be provided by the Subcontractor pursuant hereto shall not be deemed to constitute a limitation of the Subcontractor's liability for claims arising hereunder or otherwise.

## CERTIFICATE OF INSURANCE

## EXCESS LIABILITY

Original certificates of insurance, acceptable to Citadel, shall be filed with Citadel prior to the commencement of work on the Project. All required insurance shall be maintained without interruption from the date of commencement of the Project until the date of the final payment. Such certificates and insurance policies will not be materially modified or allowed to expire until at least thirty (30) days prior written notice has been given to Citadel.

## SUB-SUBCONTRACTORS

If Subcontractor wishes to use a sub-subcontractor on the Project must obtain Citadel's prior written consent, which may be withheld by Citadel in its sole and absolute discretion. Subcontractor shall incorporate all the provisions of this Exhibit I in any agreement it enters .   .vith any sub-subcontractor and shall cause its sub-subcontractors to cooperate fully with Citadel.

## NO RELEASE

The provisions set for in this Exhibit I shall in now way be interpreted as releiving Subcontractor of any other responsibility or liability under this Agreement or any other applicable law, statute, regulation or order.

# Citadel
## CONSTRUCTION CORP

| Project: | BOBBY VAN'S RESTAURANT | | | | | | |
|---|---|---|---|---|---|---|---|
| Location | JFK AIRPORT - AA TERMINAL #8 - RETAIL UNIT # M-16 | | | | | | |
| Proposal #: | NY101094 | | | | Revised Date: | Revised Date: | 07/22/08 |

| TRADE ITEM: | | MILLWORK | | | | | |
|---|---|---|---|---|---|---|---|
| | Company Name: | | | | | | Classic Design |
| | Phone Number: | | | | | | |
| | Contact: | | | | | | Michael Krasun |
| **BID BREAKDOWN** | Citadel | | | | | | |
| Base bid proposal | Y | | | | | | |
| Base bid proposal dated May 16, 2008 | Y | | | | | | $470,000 |
| Sales tax (CCI) - ICIP Project | Y | | | | | | |
| Construction schedule | Y | | | | | | |
| Overtime deliveries | Y | | | | | | |
| Bid package dated May 9, 2008 | Y | | | | | | |
| Overtime deliveries | Y | | | | | | |
| Insurance | Y | | | | | | |
| Building rules & regulations | Y | | | | | | |
| Unit prices | Y | | | | | | |
| Labor rates | Y | | | | | | |
| **Work Included** | | | | | | | |
| All work as per Architectural drawings dated 3/28/2008 and Engineering drawings dated 3/28/2008 | Y | | | | | | |
| Included Addendum Architectural drawings dated 4/17/2008 and Engineering drawings dated 4/17/2008 | Y | | | | | | |
| F/I maple veneer for columns, header, panels, moulding, railings @ Restaurant Front & Side | Y | | | | | | |
| F/I maple veneer for columns, panels, moulding, box lettering, railings @ Main Entrance | Y | | | | | | |
| F/I maple veneer for columns, panels, moulding, box lettering, railings @ Side Entrance | Y | | | | | | |
| F/I maple veneer pilasters and panels @ Bar | Y | | | | | | |
| F/I maple veneer beams and crown moulding @ Bar | Y | | | | | | |
| F/I maple veneer custom bar with subtop, dividers/supports, and panels with applied mouldings | Y | | | | | | |
| F/I polished brass foot rail for custom bar | Y | | | | | | |
| F/I maple veneer wall cabinets, wine cabinets, pilasters/dividers, subtop, bottle tier @ Back Bar | Y | | | | | | |
| F/I maple veneer framed opening @ Entrance | Y | | | | | | |
| F/I maple veneer custom banquette seating with decorative end panels @ Dining Areas | Y | | | | | | |
| F/I fire rated upholstery for banquette seating | Y | | | | | | |
| F/I maple veneer panels, chair rail, pilaster, wall cabinets @ Dining Area | Y | | | | | | |
| F/I maple veneer base cabinets with drawers, end panels, supports @ Wait Station #IV | Y | | | | | | |
| F/I maple veneer open wall and base cabinets with subtop, supports @ Wait Stations #I, #II, #III | Y | | | | | | |
| F/I maple veneer crown moulding @ Dining Area | Y | | | | | | |
| F/I maple veneer ceiling grid @ Bar | Y | | | | | | |
| Touch ups | Y | | | | | | |
| Coordination | Y | | | | | | |
| Complete furnishing of the banquet and include receiving and installation only. | Y | | | | | | |
| **FINAL AMOUNT** | | $0 | $0 | $0 | $0 | $470,000 | |
| DEPOSIT: | | | | | | | |
| EXCLUSIONS: | | | | | | | |
| Blocking | | | | | | | |
| Windows / Glazing | | | | | | | |
| Hardware | | | | | | | |
| Wood blocking | | | | | | | |
| Stone Tops | | | | | | | |

AEC Reprographics                                                              Page 1 of 2

Citadel Construction                                           DOCUMENT FOLDER LIST
                                                               Prepared: 7/22/2008

**PROJECT INFO:**                        **PROJECT ADMINISTRATOR:**
Bobby Vans                               Dominick Mascara
JFK                                      220 Fifth Avenue
                                         2nd Fl
                                         New York, NY 10001
                                         p: (212) 710 - 8600
                                         f: (212) 710 - 8601
                                         dmascara@citadelcc.com

**FOLDER:  Design / Construction**

| Title | Issue No. | Issue Date | Revision No. Date | AEC No. | AEC Date |
|---|---|---|---|---|---|
| TRANSMITTAL | | | | | |
| TRANSMITTAL | | 07-15-08 | - | | 7/15/2008 |
| ARCHITECTURALS | | | | | |
| COVER COVER SHEET | | | | - | 7/14/2008 |
| A-00    DRAWING LIST, SPECIFICATIONS | | 07-06-08 | | - | 7/14/2008 |
| A-01    PANYNJ NOTES, SPECIFICATIONS 2 | | 06-06-08 | | - | 7/14/2008 |
| A-02    SPECIFICATIONS 3 WESTFIELD AND PANYNJ NOTES | | 06-06-08 | | - | 7/14/2008 |
| A-03    WESTFIELD AND PANYNJ NOTES | | 06-06-08 | | - | 7/14/2008 |
| A-05    EGRESS PLAN, PUBLIC ASSEMBLY NOTES, EGRESS CALCULATION AND CAPACITY CALCULATION | | 06-06-08 | | - | 7/14/2008 |
| A-11    PARTITION TYPES | | 04-17-08 | | - | 7/14/2008 |
| A-12    TYPICAL CEILING DETAILS | | 04-17-08 | | - | 7/14/2008 |
| A-13    DOOR SCHEDULE, DOOR ELEVATIONS, HARDWARE SCHEDULE, ROLL DOWN SECURITY GRILLE, ELEVATION AND DETAILS | | 03-28-08 | | - | 7/14/2008 |
| A-20    DEMOLITION FLOOR PLAN, LEGEND, SLAB INFILL DETAIL, TYPICAL | | 06-06-08 | | - | 7/14/2008 |
| A-21    CONSTRUCTION FLOOR PLAN, LEGEND | | 07-06-08 | | - | 7/14/2008 |
| A-22    REFLECTED CEILING PLAN, LEGEND | | 06-06-08 | | - | 7/14/2008 |
| A-23    FINISH PLAN, FINISH NOTES, FINISH SCHEDULE, EXPANSION JOINT/CLAY TILE DETAIL | | 06-06-08 | | - | 7/14/2008 |
| A-24    FURNITURE FLOOR PLAN, FURNITURE SCHEDULE | | 06-06-08 | | - | 7/14/2008 |
| A-25    FOURTH FLOOR MECHANICAL PLAN, ROOF MECHANICAL EQUIPMENT PLAN | | 06-06-08 | | - | 7/14/2008 |
| A-30    SECTIONS I | | 06-06-08 | | - | 7/14/2008 |
| A-31    SECTIONS II | | 04-17-08 | | - | 7/14/2008 |
| A-32    SECTIONS III | | 06-06-08 | | - | 7/14/2008 |
| A-41    MISC. DETAILS I | | 04-17-08 | | - | 7/14/2008 |
| A-42    MISC. DETAILS II | | 06-06-08 | | - | 7/14/2008 |
| A-51    WAIT STATION 3 EQUIPMENT PLAN, BAR AND WAIT STATION 2 EQUIPMENT PLAN, KITCHEN, BEVERAGE STATION AND WAIT STATION 1 EQUIPMENT PLAN | | 06-06-08 | | - | 7/14/2008 |
| A-52    FOOD SERVICE EQUIPMENT SCHEDULE, ANSUL SYSTEM, PARTIAL FLOOR PLAN, TABULAR DATA AND NOTES | | 06-06-08 | | - | 7/14/2008 |
| A-53    FOOD SERVICE EQUIPMENT ELEVATIONS 1 | | 06-06-08 | | - | 7/14/2008 |
| A-54    FOOD SERVICE EQUIPMENT ELEVATIONS 2 | | 06-06-08 | | - | 7/14/2008 |
| PLUMBING | | | | | |
| P-01    PLUMBING NOTES, LEGEND AND SCHEDULE | | 07-06-08 | | - | 7/14/2008 |
| P-02    PLUMBING PLAN | | 07-06-08 | | - | 7/14/2008 |

| | | | | |
|---|---|---|---|---|
| P-03 | PLUMBING SPECIFICATIONS | 06-06-08 | - | 7/14/2008 |
| P-04 | PLUMBING DETAILS | 06-05-08 | - | 7/14/2008 |
| P-05 | PLUMBING SANITARY RISER DIAGRAM | 07-06-08 | - | 7/14/2008 |
| P-06 | PLUMBING - DOMESTIC WATER AND NATURAL GAS RISER DIAGRAM | 07-05-08 | - | 7/14/2008 |
| **FIRE PROTECTION-SPRINKLER** | | | | |
| SP-01 | FIRE SPRINKLER NOTES AND LEGEND | 07-03-08 | - | 7/14/2008 |
| SP-02 | FIRE SPRINKLER PLAN | 07-03-08 | | 7/14/2008 |
| SP-03 | FIRE SPRINKLER SPECIFICATIONS | 07-04-08 | - | 7/14/2008 |
| SP-04 | FIRE SPRINKLER DETAILS | 04-17-08 | - | 7/14/2008 |
| **MECHANICAL** | | | | |
| M0.1 | MECHANICAL SYMBOLS, NOTES, ABBREVIATIONS AND VENTILATION INDEX | 06-06-08 | - | 7/14/2008 |
| M0.2 | MECHANICAL SPECIFICATIONS 1 OF 4 | 03-28-08 | - | 7/14/2008 |
| M0.3 | MECHANICAL SPECIFICATIONS 2 OF 4 | 06-06-08 | | 7/14/2008 |
| M0.4 | MECHANICAL SPECIFICATIONS 3 OF 4 | 06-06-08 | - | 7/14/2008 |
| M0.5 | MECHANICAL SPECIFICATIONS 4 OF 4 | 03-28-08 | - | 7/14/2008 |
| M1.0 | THIRD FLOOR MECHANICAL PIPING DEMOLITION PLAN | 04-17-08 | - | 7/14/2008 |
| M1.1 | THIRD FLOOR MECHANICAL DUCTWORK DEMOLITION PLAN | 04-17-08 | - | 7/14/2008 |
| M2.1 | THIRD FLOOR MECHANICAL DUCTWORK CONSTRUCTION PLAN | 07-06-08 | - | 7/14/2008 |
| M2.2 | ROOF MECHANICAL EQUIPMENT PLAN | 07-06-08 | - | 7/14/2008 |
| M3.1 | MECHANICAL DETAILS SHEET 1 OF 6 | 03-28-08 | - | 7/14/2008 |
| M3.2 | MECHANICAL DETAILS SHEET 2 OF 6 | 07-06-08 | - | 7/14/2008 |
| M3.3 | MECHANICAL DETAILS SHEET 3 OF 6 | 07-06-08 | - | 7/14/2008 |
| M3.4 | MECHANICAL DETAILS SHEET 4 OF 6 | 07-06-08 | - | 7/14/2008 |
| M3.5 | MECHANICAL DETAILS SHEET 5 OF 6 | 04-17-08 | - | 7/14/2008 |
| M3.6 | MECHANICAL DETAILS SHEET 6 OF 6 | 07-06-08 | - | 7/14/2008 |
| M4.1 | MECHANICAL SCHEDULES | 06-06-08 | - | 7/14/2008 |
| M5.1 | MECHANICAL AIR FLOW DIAGRAMS | 07-06-08 | - | 7/14/2008 |
| **ELECTRICAL** | | | | |
| E0.1 | ELECTRICAL SYMBOL LIST, ABBREVIATIONS AND GENERAL NOTES | 04-17-08 | - | 7/14/2008 |
| E0.2 | ELECTRICAL ONE-LINE DIAGRAM, PARTIAL RISER DIAGRAM | 07-06-08 | - | 7/14/2008 |
| E0.3 | KITCHEN EQUIPMENT ELECTRICAL CONNECTION DETAILS AND KITCHEN EQUIPMENT SCHEDULE | 03-28-08 | - | 7/14/2008 |
| E0.4 | ELECTRICAL DETAILS | 04-17-08 | - | 7/14/2008 |
| E0.5 | ELECTRICAL SPECIFICATIONS | 04-17-08 | - | 7/14/2008 |
| E0.6 | ELECTRICAL PANEL SCHEDULES | 07-06-08 | - | 7/14/2008 |
| E1.0 | ELECTRICAL LIGHTING PLAN | 04-17-08 | - | 7/14/2008 |
| E1.1 | ELECTRICAL LIGHTING FIXTURE SCHEDULE, LIGHTING NOTES AND DETAILS | 07-06-08 | - | 7/14/2008 |
| E2.0 | ELECTRICAL POWER PLAN | 07-06-08 | - | 7/14/2008 |
| E2.1 | ELECTRICAL POWER PLAN | 07-06-08 | - | 7/14/2008 |
| E3.0 | ELECTRICAL FIRE ALARM NOTES, RISER DIAGRAM AND DETAILS | 06-06-08 | - | 7/14/2008 |
| E3.1 | ELECTRICAL FIRE ALARM PLAN | 06-06-08 | - | 7/14/2008 |
| E4.0 | LIGHTNING PROTECTION PLAN, SPECIFICATIONS AND DETAILS | 04-17-08 | - | 7/14/2008 |

# EXHIBIT B



**Citadel**
CONSTRUCTION CORP

220 Fifth Ave
2nd Floor
New York, NY 10001
Phone: 212-710-8600
    Fax:212-710-8601

## PURCHASE ORDER

TO:       Classic Design & Fabrication          Subcontract #:    PNY08119-013
          1207 Wood CT                                    Date:    11/4/2008
          Plant City, FL  335635                           Job:    WURK Times Square, LLC
                                                          Job #:    10-08-119
                                                   Job Address:    1515 Broadway
                                                                   New York, NY  10036

Scope of Work:

Provide labor and materials to furnish all work as per attached Drawing Manifest.  And comply with all building rules and regulations.
Subcontractor will conform to the schedule required to achieve desired completion date.

THE SUBCONTRACTOR/VENDOR MUST SIGN THIS COVER SHEET AND INITIAL ALL SHEETS ATTACHED HERETO WHERE
REQUESTED.

Drawing Manifest for 1515 Broadway : WURK: T-1, AI-11-00, AI-11-00.1, AI-11-01, AI-11-02, AI-11-03, AI-11-04, AI-11-05, AI-12-00,
AI-12-00.1, AI-12-01, AI-12-02, AI-12-03, AI-12-04, AI-12-05, D-1, D-2, D-2A, D-3, D-4, D-4A, D-5, D-5A, D-5B, D-5C, D-5D, D-5E, D-6,
D-7, D-7A, D-7B, D-8, S-1, E-1, E-2, E-3, E-11-1, E-11-2, E-11-3, E-12-1, E-12-2, E-12-3, FA-11-1, FA-12-1, MD-11-1, MD-12-1,
MD-12-2, M-1, M-2, M-3, M-11-1, M-11-2, M-12-1, M-12-2, P-1, P-2, P-11-1, P-12-1, SP-1, SP-2, SP-11-1, SP-12-1

Inclusions:                                                  Total Subcontract Amount:    290,000.00

See attached scope breakdown
Exclusions:

See attached scope breakdown



Citadel
CONSTRUCTION CORP

Governing Terms & Conditions

This Agreement (the "Agreement") is entered into effective as of November 04, 2008, by and between Citadel Construction Corp., a Delaware corporation ("Citadel") and Classic Design & Fabrication, ("Subcontractor").

I.       Citadel wishes to retain Subcontractor, and Subcontractor agrees to be retained, to perform certain work, as set forth in the Contract Documents and as supplemented from time to time, for the fixed Contract Price set forth above herein. Each party intends for this Agreement to be legal, binding and enforceable and agrees not to challenge the enforceability or validity of this Agreement based on any lack of authority of any employee to execute this Agreement or any law requiring agreements to be in writing or to be signed by the parties. Unless otherwise specified herein, this Agreement (including all exhibits, schedules and written supplements) shall be the sole agreement between the parties as to the Work that Subcontractor is to perform and shall only be amended by a written instrument executed by both Citadel and Subcontractor. Conflicts in the Contract Documents brought to the attention of Citadel after the execution of this Agreement shall not be considered as a basis for adjustment in the Contract Price.

II.      Time is of the essence with respect to the Work that Subcontractor is to perform pursuant to this Agreement. Subcontractor agrees to commence and prosecute the Work when directed by Citadel in accordance with the Project Schedule set forth in the Contract Documents. Citadel shall have the right to decide the order, time and priority in which various elements of the Work are to be performed by Subcontractor. Citadel shall have the right to seek damages and withhold payment for costs incurred by Citadel in the event that Subcontractor (i) exceeds the allotted timeframe set forth in the Project Schedule or (ii) fails to comply with the individual segments of time for specific scopes of the Work as set forth in the Project Schedule. In the event that Subcontractor fails to complete the Work within the timeframe set forth in the Project Schedule, Subcontractor acknowledges and agrees that Citadel may set-off against any payment due to Subcontractor, on this or any other project, to compensate Citadel for damages resulting from Subcontractor's failure to comply with the Project Schedule.

III.     Subcontractor agrees to perform the Work in a prompt, continuous and diligent manner and will complete all Work in accordance with the Contract Documents. Subcontractor shall, as part of its performance of the Work, provide all materials, supplies, tools, equipment, supervision, labor, utilities, testing, certifications, shop drawings and other items necessary to fully perform all of the Work and to complete said Work in accordance with the Contract Documents. The Contract Price paid by Citadel to Subcontractor shall include the cost for any and all taxes, licenses, bond premiums, insurance premiums, guaranties and warranties. A labor dispute shall not provide an excuse for the failure to adhere to and satisfy the Project Schedule.

IV.      Subcontractor represents and warranties to Citadel that: (a) Subcontractor is duly qualified, registered, organized and licensed to do business in the State where the Work is to be performed; (b) Subcontractor is aware of and accepts all of its obligations under local, state and national laws, rules and regulations; (c) the execution of this Agreement has been duly authorized by all necessary action on the part of Subcontractor and does not violate any of the terms and conditions set forth in Subcontractor's governing documents, any contracts to which it is a party, or any law, rule, regulation, or order applicable to it; (d) Subcontractor is not insolvent, nor is it subject to any proceedings – pending, threatened, or contemplated - against it would result in Subcontractor becoming insolvent or bankrupt; (e) this Agreement constitutes a legally valid and binding obligation enforceable against Subcontractor in accordance with its terms.

V.       Subcontractor shall take necessary precautions to protect the Work and the work of others from damage caused by Subcontractor's operations. Should Subcontractor damage the Work, the Project Site or the property of Citadel or others, Subcontractor shall promptly remedy such damage to the satisfaction of Citadel.

VI.      Subcontractor shall, with respect to the Work, give any required notices or filings to authorities and secure and pay for all permits, fees, licenses, assessments and taxes (including local and state sales and use taxes) necessary to complete the Work in accordance with the Contract Documents. The Subcontractor shall comply with all federal, state and local tax laws, social security acts, unemployment compensation acts and workers' compensation acts with respect to its performance of the Work. All such costs of compliance, permits, licenses, taxes and insurance shall be deemed to be included in the Contract Price.

VII.     Subcontractor acknowledges that it has reviewed, and is familiar with Citadel's Safety and Health Program (the "Safety Program") which is incorporated herein by reference and that Subcontractor shall abide by the terms of the Safety Program at all times

performance of the Work - in addition to its compliance with the Safety Program - and shall abide by all applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons and property. Failure to comply with the Safety Program, as well as any other applicable laws or regulations, may result in withholding of payment by Citadel until such time as Subcontractor remedies any safety violations or inadequacies. Subcontractor shall defend, indemnify, and hold harmless Citadel, its officers, directors, advisors, employees, agents, shareholders, the owner of the Project and the owner of the Project Site, (collectively, the "Citadel Indemnities") from any and all claims, damages, fines or other costs levied as a result of Subcontractor's failure to abide by any safety, health, fire or environmental rules, laws, regulations or ordinances in the planning and/or execution of the Work. Citadel shall have the authority to stop any work in progress to enforce safety requirements on the Project Site. Citadel shall not be responsible for any damages due to a work stoppage initiated by Citadel for safety related reasons. In the event that the Work or the Project Site is stopped or shut down by Citadel, or any outside agency or authority, caused in whole or in part due to any act, error or omission of Subcontractor, including but not limited to those related to safety and health, Subcontractor shall be responsible for all costs and damages suffered by Citadel due to such delays or disruptions, in addition to any liquidated damages suffered by Citadel as a result of same.

VIII.    Subcontractor may employ subcontractors of its own as part of the performance of the Work only upon prior written approval by Citadel - said approval may be withheld by Citadel in its sole and absolute discretion. Citadel's refusal to approve a lower-tier subcontractor shall not be considered a justifiable reason for affecting either the Project Schedule or Contract Price. Subcontractor shall be liable to Citadel for any acts or omissions of lower-tier subcontractors employed by Subcontractor and their agents and employees. Subcontractor shall require each lower-tier subcontractor to abide by the terms and conditions of this Agreement and shall promptly notify Citadel of any lower-tier subcontractor who is in default under the terms of this Agreement or any other agreement to which it is a party no later than three (3) business days after the occurrence of the default. Nothing contained in this Agreement shall create a contractual relationship between Citadel and Subcontractor's subcontractors or suppliers. Subcontractor shall protect, indemnify and hold harmless the Citadel Indemnities, from any damages, lawsuits, expenses, demands, claims, liens (including mechanics lien) and any cause of action arising from any of Subcontractor's subcontractors, employees or suppliers.

IX.    Subcontractor warrants to Citadel that materials and equipments furnished as part of the Work will be of good quality and shall be new unless otherwise provided in the Contract Documents. Work not conforming to the standards set forth in the Contract Documents, including substitutions not properly approved or authorized, shall be deemed defective and not accepted by Citadel. This warranty shall be in addition to, and not in limitation or in lieu of, any warrants or remedy required by law or by the Contract Documents. Subcontractor agrees to satisfy such warranty obligations, which appear within the guaranty or warranty period established in the Contract Documents without cost or expense to Citadel. Unless otherwise provided in the Contract Documents, Subcontractor shall provide a warranty for the Work for a period of one (1) year from the date of final completion of the Project.

X.    If a mechanic's lien or bond claim is filed against Citadel, its surety, the Project or the Project Site, which in any way relates to this Agreement, Subcontractor shall defend against any such claim, lien or proceedings at its sole cost and expense and shall indemnify the Citadel Indemnities against any losses, damages, and expenses - including reasonable attorneys fees - which may be incurred as a result of said mechanic's lien. If the mechanic's lien is not bonded or satisfied by Subcontractor within seventy two (72) hours of receipt of written notice to do so from Citadel, Citadel shall then have the right without further notice to Subcontractor to bond the lien and withhold all costs associated with bonding the lien (including attorneys fees) from any future payments due to Subcontractor.

XI.    Without invalidating this Agreement, Citadel may, by issuance of a written order (a "Change Order") instruct Subcontractor to make certain changes to the Work, including any addition to, deletion from, or modification to the quality, function or intent of the Work and to adjust the Project Schedule and Contract Price accordingly (all of the foregoing, "Changes"). Changes may only be authorized by Change Orders, issued in writing to Subcontractor. Change Orders will constitute the sole and exclusive remedy to Subcontractor for any Changes. For any Change initiated by Citadel, Citadel shall submit to Subcontractor a Change Order Notice. Subcontractor will promptly review the Change Order Notice and, within three (3) business days, notify Citadel of any impact that the proposed Change(s) would have on the Contract Price or Project Schedule. Based upon such information, Citadel may, but shall not be obligated to, issue a Change Order to Subcontractor to effect the Change. Subcontractor shall not perform any Changes to the Work without an executed Change Order issued by Citadel. Subcontractor shall not be entitled to compensation for any additional work it performs that is not covered by an executed Change Order. All Change Orders issued pursuant to this Agreement shall form a part of this Agreement and shall be governed by the terms of this Agreement.

In the event that Subcontractor becomes aware of any circumstances that Subcontractor has reason to believe may necessitate a Change, Subcontractor will notify Citadel in writing of the potential Change and shall include all necessary documentation sufficient to enable Citadel to determine (a) the factors necessitating the possibility of a Change, (b) the impact which the Change is likely to have on Contract Price and Project Schedule and (c) any other information which Citadel may request in connection with such Change.  If Subcontractor fails to notify Citadel of a circumstance necessitating a Change within three (3) business days after Subcontractor becomes aware of such circumstances, Citadel shall not be obligated to issue a Change Order to Subcontractor for the Change.

XII.     EXCEPTING ONLY THE RESPONSIBILITY OF CITADEL FOR ITS OWN ACTS OF GROSS NEGLIGENCE, TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR SHALL INDEMNIFY AND HOLD HARMLESS THE CITADEL INDEMNITIES FROM AND AGAINST ANY CLAIMS, DAMAGES, LOSSES, FINES, LIABILTIES, PAYMENTS AND EXPENSES (INCLUDING BUT NOT LIMITED TO ATTORNEYS FEES) ARISING OUT OF AND IN CONNECTION WITH INJURIES (INCLUDING DEATH) OR DAMAGE TO PROPERTY (INCLUDING MATERIALS, MACHINERY, TOOLS AND EQUIPMENT OR OTHER WORK PERFORMED BY OTHER SUBCONTRACTORS ON THE PROJECT) RESULTING FROM OR CONNECTED TO SUBCONTRACTOR'S PERFORMANCE OF THE WORK, ARISING OUT OF THE WORK BY SUBCONTRACTOR OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY SUBCONTRACTOR (INCLUDING SUPPLIERS AND SUBCONTRACTORS OF THE SUBCONTRACTOR) OR ANYONE ELSE FOR WHOSE ACTS SUBCONTRACTOR MAY BE LIABLE.  THE PROVISIONS SET FORTH HEREIN SHALL NOT BE CONSTRUED TO NEGATE, OR ABRIDGE, OR OTHERWISE REDUCE ANY OTHER RIGHT OR OBLIGATION OF INDEMNITY, WHICH WOULD OTHERWISE EXIST AS TO ANY PARTY OR PERSON SET FORTH HEREIN.  SUBCONTRACTOR'S INDEMNIFICATION OBLIGATION AS SET FORTH HEREIN SHALL NOT BE LIMITED IN ANY WAY BY ANY LIMITATION ON AMOUNT OF DAMAGES, COMPENSATION OR BENEFITS PAYABLE BY OR FOR SUBCONTRACTOR UNDER WORKER'S OR WORKMEN'S COMPENSATION ACTS, DISABILITY ACTS OR OTHER EMPLOYEE BENEFIT ACTS.

XIII.    Together with the signed copy of this Agreement, Subcontractor shall provide to Citadel (a) the schedule of values for the Work; (b) a complete list of all proposed subcontractors to be used by Subcontractor on the Project; (c) insurance certificates in compliance with the insurance requirements set forth in this Agreement and (d) a 24 hour/7 day/week contract list showing names, home and cellular telephone numbers and email addresses for Subcontractor's Project Manager, Field Superintendent and Owners.  Payment to Subcontractor for the Work shall not constitute or imply acceptance by Citadel of any portion of the Work and shall not constitute a waiver of any claims against Subcontractor.  No payment shall be due, nor made, to Subcontractor unless Subcontractor has complied with all obligations set forth in this Agreement and has provided lien waivers in a form and substance as required by Citadel.  Based upon applications for payment submitted by Subcontractor to Citadel, Citadel shall make progress payments on account of the Contract Price to Subcontractor.  Applications for monthly progress payments shall be submitted by Subcontractor to Citadel using forms and methods required by Citadel.  Citadel shall pay ninety (90%) percent of the amount of the approved application for payment and shall withhold ten (10%) percent of the approved payment for retainage.  If Citadel has reason to believe that Subcontractor is not satisfying obligations incurred by it in accordance with the performance of its Work, Citadel shall give written notice to Subcontractor and may take any necessary actions to see that progress payments made on account of the Contract Price are being used to satisfy said obligations.  If within five (5) business days after delivering notice to Subcontractor, Subcontractor fails to (a) supply evidence to the satisfaction of Citadel that the obligations have been satisfied or (b) posts a bond indemnifying Citadel, the Project and the Project Site from such obligations, then Citadel shall have the right to withhold funds from future progress payments to Subcontractor to satisfy such obligations in question, together with all costs and expenses incurred by Citadel in connection with same (including attorneys fees).  Citadel shall have the right, at any time during the Project, to issue joint checks to Subcontractor and its suppliers or subcontractors or to pay such suppliers or subcontractors directly.

Prior to the release of any retainage held and the final payment on the Project, Subcontractor shall submit and/or certify to Citadel (u) an affidavit that all payrolls, materials, equipments and other indebtedness related to the Work have been paid or otherwise satisfied; (v) all disputes, liens, claims and causes of action relating to the Work or to this Agreement shall have been resolved; (w) all warranties, operations manuals, record drawings, maintenance bonds or other documents required by the Contract Documents shall have been provided; (x) final lien waivers for the Project and (y) any other data or documents required by Citadel.  Final payment and the release of retainage shall constitute a waiver and release of all claims by Subcontractor with respect to the Work but shall not relieve Subcontractor of any liability for the obligations assumed hereunder or for faulty or defective work appearing after final payment or for any warranty obligations.

XIV.   Citadel shall have the right to terminate this Agreement at any time for any reason whatsoever upon written notice (the "Termination Notice") to Subcontractor specifying the extent to which this Agreement is terminated and the date upon which such termination shall be effective.  Immediately upon receipt of the Termination Notice, Subcontractor agrees to (a) stop work on the date and to the extent specified; (b) place no further orders or subcontracts for materials, services or equivalent except as may be necessary for the completion  of that portion of the Work that is not affected, (c) transfer title and deliver to Citadel all materials, work in progress, completed work and supplies for which Subcontractor has been paid and (d) complete performance of any part of the Work that is not terminated pursuant to the Termination Notice.  Citadel's liability to Subcontractor for said termination shall be limited to the value of the Work performed prior to the termination date together with ten (10%) percent of the total amount paid to Subcontractor prior to the termination date for reasonable overhead and profit.  In no event shall Citadel be liable for the loss of anticipated profits or any special or consequential damages arising from said termination.

XV.   If Subcontractor refuses or fails to supply enough properly skilled workers, proper materials or equipment or fails to maintain the Project Schedule - including completion of open and incomplete items delivered to Subcontractor upon substantial completion of the Project (the "Punch List") - , or if Subcontractor disregards laws, ordinances, rules or regulations governing the Work or the Project Site or if Subcontractor is in breach of any of the terms and conditions of this Agreement and fails within three (3) business days after receipt of written notice from Citadel (the "First Notice") to commence and continue satisfactory correction of such default with diligence and promptness, then Citadel shall, without prejudice to any rights or remedies, have the right to (a) retain one or more additional subcontractors, or use Citadel's own personnel, to perform such part of the Work that Subcontractor has failed to perform and charge the cost thereof to Subcontractor, (b) supply additional workers, equipment and materials as Citadel deems necessary for completion of the Work which Subcontractor has failed to complete or perform and charge the cost thereof to Subcontractor; and (c) withhold further progress payments due Subcontractor pending corrective action to the extent required by and to the satisfaction of Citadel.  In the event of any emergency affecting the safety of persons and/or property, Citadel may proceed as above without written notice.

Notwithstanding the foregoing, if Subcontractor fails to commence and satisfactorily continue correction of a default hereunder within three (3) business days of its receipt of the First Notice then Citadel may - in addition to or in lieu of any other remedies provided hereunder - issue a second written notice (the "Final Notice") by certified or overnight mail to Subcontractor.  If Subcontractor fails to commence and continue correction of a default within three (3) business days after its receipt of the Final Notice, Citadel may terminate this Agreement "for cause" and without further notice.  Upon such a termination "for cause", Citadel shall have the right to (w) use any materials, implements, equipment, tools or appliances furnished or belonging to Subcontractor to complete the Work; (t)  to assume any agreements and orders in effect between Subcontractor and any of its subcontractors or suppliers and Subcontractor hereby consents to same; (y) employ replacement subcontractors to complete Subcontractor's Work and cure any defaults hereunder.  In the event that Citadel must take such actions as described above, the cost for same, together with reasonable overhead, profit and attorneys fees, shall be deducted from any monies due or payable to Subcontractor.  Subcontractor shall be liable to Citadel for the payment of any amount by which the costs may exceed the unpaid balance of the Contract Price.  Notwithstanding anything in this Agreement to the contrary, Citadel may at any time terminate this Agreement "for cause" if Subcontractor is deemed to be insolvent or becomes subject to a proceeding in federal bankruptcy court.

XVI.   Prior to the start of the Work, Subcontractor shall procure and maintain in full force and effect, at Subcontractor's sole expense, at least until final payment and at all times thereafter when Subcontractor may be correcting, removing or replacing defective work, insurance in the amounts and subject to the limits and requirements as set forth in Exhibit 1 hereof.  Subcontractor shall provide as evidence of its insurance coverage a original certificate of insurance in a form acceptable to Citadel prior to the commencement of Work.  All insurance policies shall contain provisions that (a) coverage shall not be cancelled or not renewed until at least thirty (30) days prior notice has been given to Citadel, (b) the insurance companies have consented to a waiver of subrogation in favor of Citadel and (c) Citadel, the Citadel Indemnities and any other designees have been named as "additional insureds".

XVII.  THIS AGREEMENT AND THE RIGHTS AND THE DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE WORK IS BEING PERFORMED, WITHOUT REGARDS TO PRINCIPLES OF CONFLICTS OF LAW.  EACH PARTY HERETO WAIVES ITS RESPECTIVE RIGHT TO A JURY TRIAL WITH RESPECT TO ANY LITIGATION THAT MAY ARISE UNDER OR IN CONNECTION WITH THIS AGREEMENT.   CITADEL AND SUBCONTRACTOR EACH HEREBY SUBMIT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN THE STATE IN WHICH THE WORK IS BEING PEFORMED OVER ANY

ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT. THE PARTIES HERETO AGREE THAT A FINAL JUDGMENT IN ANY ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. THE PARTIES FURTHER AGREE THAT THE "LOSING" PARTY SHALL REIMBURSE THE OTHER PARTY FOR ALL REASONABLE COSTS, INCLUDING ATTORNEYS FEES, INCURRED AS PART OF THE LITIGATION. SUBCONTRACTOR AGREES THAT THE REMEDIES SET FORTH HEREIN SHALL BE THE SOLE REMEDIES FOR RESOLUTIONS OF DISPUTES UNDER THIS AGREEMENT. SUBCONTRACTOR SHALL CARRY ON THE PERFORMANCE OF THE WORK AND MAINTAIN THE PROJECT SCHEDULE, PENDING LITIGATION, AND IF SO, CITADEL SHALL CONTINUE TO MAKE PAYMENTS FOR THE WORK, EXCEPT FOR THE DISPUTED AMOUNT, WHICH MAY BE WITHHELD. UPON WRITTEN REQUEST, SUBCONTRACTOR SHALL COOPERATE WITH CITADEL IN ANY LITIGATION, ARBITRATION OR OTHER DISPUTE RESOLUTION BETWEEN CITADEL AND A THIRD PARTY.

XVII. Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of Subcontractor to so notify Citadel in writing immediately upon its discovery thereof. Citadel shall instruct Subcontractor as to the measure to be taken and Subcontractor shall comply with Citadel's instruction. When a discrepancy exists within the Contract Documents, the Subcontractor is deemed liable to provide the most costly specification as part of this Agreement.

XIX.   Miscellaneous.

(i)     The partial or complete invalidity of any provision of this Agreement shall not affect the validity or continuing force and effect of any other provision.
(ii) The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right with regards to further performance.
(iii) Subcontractor specifically agrees that it is an independent contractor and that Subcontractor's relationship to Citadel shall be that of an independent contractor.
(iv) In absence of a written execution by Subcontractor of this Agreement, Subcontractor's performance of Work or providing of materials after receipt of this Agreement shall be deemed conclusive acceptance of its terms and conditions.
(v)  Any notice required or permitted to be given pursuant to this Agreement shall be deemed to have been duly given when delivered by hand, telecopy or mailed by recognized overnight delivery service to either party at the addresses set forth in this agreement.

(vi)    Subcontractor shall not assign this Agreement without the prior written consent of Citadel - which consent may be withheld in Citadel's sole and absolute discretion. Citadel shall have the right to assign this Agreement to (a) any affiliate of Citadel or (b) to any third party of similar or greater financial strength than Citadel as of the date of assignment.

In witness whereof, Citadel and Subcontractor , have entered into this Agreement as of the date first written above.

Classic Design & Fabrication

_____

Date: ____10/31/08____

CITADEL CONSTRUCTION CORP.

_____

Date: ____10/31/08____

EXHIBIT I

INSURANCE REQUIREMENTS

FOR ANY WORK PERFORMED UNDER THIS AGREEMENT, AND UNTIL COMPLETION AND FINAL ACCEPTANCE OF THE WORK, SUBCONTRACTOR, AT ITS OWN EXPENSE, MUST PROMPTLY FURNISH TO CITADEL CONSTRUCTION CORP. ("CITADEL") A CERTIFICATE OF INSURANCE GIVING EVIDENCE THAT THE FOLLOWING COVERAGES ARE IN FORCE.  THE PROJECT SHALL BE IDENTIFIED ON THE CERTIFICATE AND CITADEL CONSTRUCTION CORP., ITS SUBSIDIARIES AND THEIR RESPECTIVE OFFICERS, EMPLOYEES AND AGENTS, THE PROJECT OWNER AND ANY OTHER PARTIES DESIGNATED BY CITADEL SHALL BE COVERED AS ADDITIONAL INSUREDS ON ALL APPROPRIATE POLICIES.   THE CERTIFICATE SHALL ALSO SHOW A WAIVER OF SUBROGATION IN FAVOR OF THOSE ENTITIES FOR ALL LINES OF COVERAGE.

| TYPE OF COVERAGE | MINIMUM LIMITS OF LIABILITY |
|---|---|
| Worker's Compensation & Disability | Statutory |
| Employer's Liability | |
| • Bodily Injury by Accident (per Accident) | $1,000,000 |
| Bodily Injury by Disease (per Employee) | $1,000,000 |
| Bodily Injury by Disease (Policy Limit) | $1,000,000 |

Where applicable, the Worker's Compensation insurance shall have a U.S. Longshoreman's and Harbor Work's Act Endorsement.

Commercial General Liability

Subcontractor shall purchase and maintain Commercial General Liability Insurance, which shall include a blanket contractual liability insuring the indemnification obligations of the Agreement, broad form property damage liability, and personal injury liability coverage extensions.  The policy shall provide for a General Aggregate which reinstates annually on a per project basis.  The Commercial General Liability policy must be issued on an "occurrence" basis, as distinguished from a "claims made" basis.  Such policy shall not exclude X, C, U exposures.  The Commercial General Liability policy shall include products and completed operations liability shall be maintained in full force and effect for a period of three (3) years following final completion of the Work.  Additional insured status must run to the benefit of Citadel and the Project Owner entities as identified elsewhere, on a primary and non-contributory basis, pursuant to forms CG 2033 & CG 2037 (2001 Edition) or broader.  All coverage required under commercial general liability shall be provided on an occurrence form with the following minimum limits (per Project Aggregate):

| Each Occurrence | $1,000,000 |
|---|---|
| Personal & Adv. Injury | $1,000,000 |
| Products/Completed Operations Aggregate | $1,000,000 |
| General Aggregate | $2,000,000 |

Commercial Automobile Liability

Subcontractor shall purchase and maintain Commercial Automobile Insurance to cover all vehicles owned, non-owned, hired by or used on behalf of Subcontractor.

| Bodily Injury & Property Damage | $1,000,000 Per Occurrence |
|---|---|
| Excess Liability | $5,000,000 Per Occurrence |

## PROPERTY INSURANCE

Subcontractor shall purchase and maintain Property Insurance covering construction machinery, equipment and tools use by the Subcontractor in its performance of the Work. Such coverage shall be written as a policy form at least equivalent to that provided by a "Contractor's Equipment Floater" as customererly defined within the insurance industry. Subcontractor agrees to notify all tiers of subcontractors of their obligation to involve any any machinery, equipment and tools used by them in their performance of the work.

## INDEPENDENT OBLIGATIONS

Subcontractor's insurance obligations contained in this Exhibit I are separate from and in addition to Subcontractor's indeminification obligations as set forth in this agreement.

All insurance policies shall be provided by an insurance company or companies with a rating of not less than "A-" and "Class VII" in the last available AIA Best's Rating Guide. The limits of liability shown for each typ of insurance coverage to be provided by the Subcontractor pursuant hereto shall not be deemed to constitute a limitation of the Subcontractor's liability for claims arising hereunder or otherwise.

## CERTIFICATE OF INSURANCE

## EXCESS LIABILITY

Original certificates of insurance, acceptable to Citadel, shall be filed with Citadel prior to the commencement of work on the Project. All required insurance shall be maintained without interruption from the date of commencement of the Project until the date of the final payment. Such certificates and insurance policies will not be materially modified or allowed to expire until at least thirty (30) days prior written notice has been given to Citadel.

## SUB-SUBCONTRACTORS

If Subcontractor wishes to use a sub-subcontractor on the Project must obtain Citadel's prior written consent, which may be withheld by Citadel in its sole and absolute discretion. Subcontractor shall incorporate all the provisions of this Exhibit I in any agreement it enters into with any sub-subcontractor and shall cause its sub-subcontractors to cooperate fully with Citadel.

## NO RELEASE

The provisions set for in this Exhibit I shall in now way be interpreted as releiving Subcontractor of any other responsibility or liability under this Agreement or any other applicable law, statute, regulation or order.



**Citadel**
CONSTRUCTION CORP

$290,000
PNY 08 115 - 013

| Project: | WJFK TIMES SQUARE | | | |
|---|---|---|---|---|
| Location: | 1515 Broadway 11th and 12th floors | | | |
| Proposal #: | 101122 | | | 6/04/08 |

| TRADE ITEM: | ARCHITECTURAL METAL & GLASS | | | |
|---|---|---|---|---|
| Company Name: | | Classic Design | | |
| Phone Number: | | 954-263-8496 | | |
| Contact: | | Mike Krasun | | |

| BID BREAKDOWN | Citadel | | | |
|---|---|---|---|---|
| Base bid proposal submitted | Y | | | |
| Bid package dated | Y | | | |
| Construction schedule dated 10/09/08 | Y | | | |
| Sales tax  (CCI) | Y | | | |
| Overtime deliveries  (7am - 8am) | Y | | | |
| Deposits on materials required | Y | | | |
| Insurance | Y | | | |
| Building rules & regulations | Y | | | |
| Attended site visit on 10/09/08 | Y | | | |
| Overtime for schedule | Y | | | |
| Unit prices | Y | | | |
| Labor rates | Y | | | |
| Furnish and install all required work as per Swanke Hayden Connell and Robert Derector Engineering drawings dated 10/1/08 Issued for Bid | Y | | | |
| Furnish and install all required work as per Swanke Hayden Connell and Robert Derector Engineering SPECIFICATIONS dated 10/1/08 Issued for Bid | Y | | | |
| Work Included | | | | |
| Furnish and install two (2) openings at the 11th floor elevator lobby.  Two pairs of glass doors, one pair is to receive a sidelight | Y | | | |
| Back painted glass at elevator lobbies - 1/2" tempered glass - to match paint P-1 at elevator lobbies. At the 11th and 12th floor, with stainless steel base at all locations | Y | | | |
| Furnish and install opening at the 12th floor elevator lobby. | Y | | | |
| Furnish and install office side lights at type G door - with acid etched glass on both sides | Y | | | |
| Furnish and install office side lights at type H door - with acid etched glass on both sides | Y | | | |
| All blocking and bracing for your work | Y | | | |
| All hardware for the glass doors at the elevator lobby - inclusive of mag lock | Y | | | |
| Furnish and install mirrors at core restrooms - tilt mirrors are by others | Y | | | |
| Furnish and install TP-1 3 form - feature wall behind reception desk as per detail D-7A elevation D | Y | | | |
| Furnish and install privacy screen the sink and the first urinal - galaxy glass Silk glass SK-450 (DS) | Y | | | |
| Stainless steel panels above elevator door as per elevation K /D-4A | Y | | | |
| Stainless steel reveals at wallcovering | Y | | | |
| All work as per 10/17 drawings | Y | | | |
| Add for etched glass at office side lights in lieu of office sidelights | Y | | | |
| | | | | |
| FINAL AMOUNT | | | | |
| EXCLUSIONS: | | | | |


CONSTRUCTION CORP

| Project: | WURK - TIMES SQUARE | | |
|---|---|---|---|
| Location: | 1515 Broadway 11th and 12th floors | | |
| Proposal #: | 01122 | | |

## TRADE ITEM:                          RAILINGS

| | | Company Name: | | Classic Design | |
|---|---|---|---|---|---|
| | | Phone Number: | | 954-253-0498 | |
| | | Contact: | | Mike Krasun | |
| BID BREAKDOWN | | | Citadel | | |
| Base bid proposal submitted | | | | | |
| Construction schedule dated 10/09/08 | | | Y | | |
| Sales tax  (CCI) | | | Y | | |
| Overtime deliveries  (7am - 8am) | | | Y | | |
| Deposits on materials required | | | Y | | |
| Insurance | | | Y | | |
| Building rules & regulations | | | Y | | |
| Attended site visit on 10/09/08 | | | Y | | |
| Overtime for schedule | | | Y | | |
| Unit prices | | | Y | | |
| Labor rates | | | Y | | |
| Furnish and install all required work as per Swanke Hayden Connell and Robert Derector Engineering drawings dated 10/1/08 Issued for Bid | | | Y | | |
| Furnish and install all required work as per Swanke Hayden Connell and Robert Derector Engineering SPECIFICATIONS dated 10/1/08 Issued for Bid | | | Y | | |
| All work as per S1 dated 10/1/08 from the VSA group | | | | | |
| | | | | | |
| Work Included | | | | | |
| Furnish and install labor and material to engineer, fabricate, and prep paint the steel stair well and stainless steel handrails as shown by SHCA | | | | | |
| Furnish and install steel tube stringers, stair tread plates, and landing 4 connection point tubes, ground and prepped for primer paint | | | Y | | |
| Includes stainless steel 2" x 3" rectangular tube with 1 - 1/2" grab rail includes tempered glass panel inserts and all brackets and installation hardware. Shop drawings for fieldwork including welding | | | Y | | |
| Available for delivery 4 weeks after contract / deposit | | | Y | | |
| Installation, inclusive of all rigging | | | Y | | |
| All welding on overtime into assemled unit | | | Y | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| FINAL AMOUNT | | | | | |
| EXCLUSIONS: | | | $0 | | |
| Furnishing of stairwell is not included, to be carried under a separate cover. | | | | | |